### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| A.L.M. HOLDING COMPANY and ERGON ASPHALT & EMULSIONS, INC., ) ) ) | |
| *Plaintiffs/Counterclaim-Defendants*, ) ) | C.A. No. 24-363-JPM |
| v. ) ) | **JURY TRIAL DEMANDED** |
| ZYDEX INDUSTRIES PRIVATE LIMITED and ZYDEX INC., ) ) ) ) | |
| *Defendants/Counterclaim-Plaintiffs*. ) | |

### ZYDEX INDUSTRIES PRIVATE LIMITED AND ZYDEX INC.'S MOTION FOR ISSUANCE OF LETTERS OF REQUEST AND COMMISSIONS FOR THE TAKING OF EVIDENCE ABROAD

Defendants Zydex Industries Private Limited and Zydex Inc. ("Defendants," or "Zydex") respectfully move for issuance of Letters of Request under the Hague Evidence Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("the Convention") in the form attached as **Exhibits A-B**, and for issuance of commissions for the taking of evidence in the form attached as **Exhibits C-D**.[1]  The purpose of this motion is to allow Zydex to obtain relevant evidence from (i) Dortmunder Gußasphalt GmbH & Co. KG ("DGA Group") in Germany; and (ii) Arkema Group ("Arkema") in France.  Zydex seeks testimony from DGA Group relating to Colzuphalt, a prior art asphalt additive, and testimony and documents from Arkema relating to Cecabase RT, another prior art asphalt additive.  As discussed below, Zydex believes that these

---

[1] Pursuant to Rule 7.1.1 of the Local Rules of the United States District Court for the District of Delaware, Counsel for Defendants certifies that they have made reasonable efforts, including oral communication with Plaintiffs' Counsel including Delaware Counsel, to reach an agreement regarding this motion but have been unable to reach agreement.  On July 5, 2024, Zydex's counsel sent Plaintiffs' counsel an earlier draft of this motion.  On July 11, 2024, Plaintiffs' counsel responded that they intended to oppose this motion.  On July 12, 2024, and July 15, 2024, counsel for both sides met and conferred via Zoom video conference, and Plaintiffs maintained their opposition to this motion.

additives were extensively used in Europe prior to the priority dates of the patents at issue in this lawsuit, that there are prior art publications relating to these additives exclusively in the possession of DGA Group and Arkema, and that the documents and testimony sought will demonstrate that the patents asserted in this action are invalid.

Given the relatively short time available to complete discovery and the time constraints involved in seeking discovery abroad, Zydex is seeking issuance of both letters of request (which allow for the taking of evidence by compulsion), and commissions (which allow for the taking of evidence voluntarily).  Zydex will make use of the procedures that are most appropriate based on discussions with the entities from which Zydex is seeking discovery.  For instance, if the foreign witnesses ultimately do not agree to provide information voluntarily pursuant to the commissions, then there may not be time to return to this Court to seek the issuance of letters of request before the close of fact discovery.

## I.     BACKGROUND

Plaintiffs allege infringement of U.S. Patent Nos. 7,815,725 ("the '725 Patent"), 7,981,466 ("the '466 Patent"), 8,734,581 ("the '581 Patent"), 9,175,446 ("the '446 Patent"), 9,394,652 ("the '652 Patent"), and 10,214,646 ("the '646 Patent") (collectively "the Asserted Patents").  (D.I. 1 at ¶ 1.)  The '725 Patent, '466 Patent, '652 Patent, and '646 Patent claim priority to a provisional patent application dated September 7, 2007; the '581 Patent and '446 Patent claim priority to a provisional patent application dated February 22, 2008.

The Asserted Patents are directed to certain asphalt paving compositions and methods of making them.  In particular, the Asserted Patents involve the addition of certain additives to asphalt mixtures to lower the temperature necessary to mix those compositions and/or to lower the temperature necessary to apply and/or compact those compositions.  To be consistent with the terminology used by Plaintiffs in the Complaint, the '725 Patent, the '466 Patent, the '652 Patent,

and the '646 Patent are referred to herein collectively as the "Warm Mix Patents," while the '581 Patent and the '446 Patent are referred to herein collectively as the "Hot Mix/Warm Compaction Patents."

Zydex has obtained information indicating that, prior to January 1, 2008, DGA Group and Arkema had already developed and been involved with public uses of the asphalt compositions and methods claimed in the Asserted Patents. For more than two decades, DGA Group has manufactured and sold an asphalt additive called Colzuphalt, which was used in asphalt testing conducted on two highway sections in Germany in 2004 that appear to utilize the processes and compositions claimed in the Asserted Patents. *See* **Exhibit E**. This project was carried out under German research contract 7.203 (*see* **Exhibit E** at 76) which is a shorthand reference to the project designated FE07.203/2002/CRB.[2] This project was directed to the study of "low-temperature rolled asphalt" and evaluating the reduction in temperatures of production and processing of asphalts. *See* **Exhibit E** at 76. Since the 2000s, Arkema has also manufactured and sold an asphalt additive called Cecabase RT, which was used in paving projects in France in 2006 that likewise appear to utilize the processes and compositions claimed in the Asserted Patents. *See* **Exhibit F.** According to the press release in **Exhibit F**, Cecabase RT additives were used in 2006 to produce "80,000 tonnes of warm bituminous mix", and also used to produce "300 tonnes of BBSG 0-10 warm asphalt mix" that were produced at temperatures of "125 °C instead of 160 °C, laid down at 116°C, and finally compacted at 105°C instead of 140°C." **Exhibit F** at 1. Such temperatures, compositions, and processes appear to fall within the scope of one or more of the patent claims asserted in this case. Testimony regarding these additives from the DGA Group and documents

---

[2] Zydex refers to this project by the full designation FE07.203/2002/CRB in the proposed topics for testimony set forth in **Exhibit A.**

and testimony from Arkema are therefore relevant to whether the Asserted Patents are invalid, because those materials will likely show that the claimed subject-matter of the Asserted Patents was described in a printed publication before the alleged priority dates of the invention claimed in those patents. Testimony from the DGA Group and Arkema regarding the dates of public availability of such documents is also relevant to establishing that these documents constitute prior art under the pre-AIA version of Sections 102 and 103 of the Patent Act.[3]

While Zydex has been able to obtain certain materials relating to Colzuphalt and Cecabase RT, searching for prior art publications discussing these materials has been difficult for at least two reasons. First, any such publications relate to events that occurred roughly two decades ago, and so while certain marketing materials and other publications would have been readily available to members of the public in the mid- to late-2000s, those materials may not be easily located today. Second, those publications are typically written in German (in the case of DGA Group) or French (in the case of Arkema). Those difficulties have led Zydex to conclude that the most efficient way forward is to seek evidence relating to Colzuphalt directly from the company that developed it and publicized it (DGA Group), and to seek evidence relating to Cecabase RT directly from the company that developed it and publicized it (Arkema).

Defendants therefore seek the documents and/or testimony set forth in **Exhibits A-D** from the DGA Group and Arkema to develop evidence relevant to the invalidity of the Asserted Patents.

## II.     LEGAL STANDARD

"The Convention allows judicial authorities in one signatory country to obtain evidence located in another signatory country 'for use in judicial proceedings, commenced or

---

[3] Because the Asserted Patents are all based on applications that were filed prior to March 16, 2013, the current version of the Patent Act (as it was modified by the America Invents Act, or "AIA") does not govern this case. Throughout this Motion and its attachments, Defendants have referred to and applied the pre-AIA version of the Patent Act.

4

contemplated.'" *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 472 (D. Del. 2003). While the party seeking discovery pursuant to the Convention bears the burden of persuading the trial court that such discovery is warranted, "[t]hat burden is not great," because "the 'Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention." *Id.* at 474 (quoting *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 541 (1987)).

There are three available methods of taking evidence pursuant to the Convention: "(1) by a Letter of Request or 'letter rogatory' from a U.S. judicial authority . . . , (2) by an American or foreign diplomatic or consular officer or agent after permission is obtained from the foreign state, and (3) by a private commissioner duly appointed by the foreign state." *Tulip*, 254 F. Supp. 2d at 472 (citations omitted). As discussed below, all three are relevant to Zydex's motion.

     **A.**     **Letters of Request**

Under Chapter 1 of the Convention, a U.S. court can request, by means of a Letter of Request, that the competent authority of another state party to the Convention obtain evidence for use in a judicial proceeding. *See* Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, art. 1, Mar. 18, 1970; *see also* Fed. R. Civ. P. 28(b)(2); *Ingenico Inc. v. Ioengine, LLC*, Case No. 18-cv-826-WCB, 2021 WL 765757, at *1 (D. Del. Feb. 26, 2021). Germany and France are parties to the Convention. *See* Hague Conference on Private International Law, Status Table, https://www.hcch.net/en/instruments/conventions/statustable/?cid=82. Once issued, the letter of request is received by a central authority designated by the foreign state. *See* Convention art. 2. The central authority forwards the letter to the authority competent to execute it, typically a local court. *See id.* art. 6. That court applies its own law in the taking of the evidence, unless a special procedure is requested. *See id.* art. 9. It can compel compliance. *See id.* art. 10.

It then returns the executed letter with the evidence through the same channels it received the letter. *See id.* art. 13.

Although the issuance of letters of request (also known as "letters rogatory") is within the Court's discretion, although "the Third Circuit has explained that . . . 'trial courts [have] *limited* discretion to deny applications for the issuance of a [letter rogatory].'" *Liqwd, Inc. v. L'Oreal USA, Inc.*, Case No. 17-cv-14-JFB-SRF, 2018 WL 11189616, at *3 (D. Del. Nov. 16, 2018) (quoting *In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 890 (3d Cir. 1984)) (emphasis in original). As such, "some good reason must be shown by the opposing party for a court to deny an application for a letter rogatory." *Id.* (quoting *Ethypharm S.A. France v. Abbott Laboratories*, 748 F. Supp. 2d 354, 358 (D. Del. 2010)). And when a party seeks evidence from a *non*-party abroad, it generally cannot use a subpoena or other ordinary methods of discovery to obtain the evidence. *See* Fed. R. Civ. P. 45(b)(2) (territorial scope on subpoena power). A refusal to issue a letter of request is thus tantamount to a refusal to allow discovery from the foreign non-party.

Discovery pursuant to the Convention must meet the scope limitations of Fed. R. Civ. P. 26. *See Ethypharm S.A. France*, 748 F. Supp. 2d at 359. An application to issue a letter of request is therefore proper where the evidence sought is "relevant to [a] party's claim or defense," *see id.*, and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

**B.     Commissions**

Chapter 2 of the Convention provides for taking evidence without compulsion when the foreign witness is willing to cooperate. Chapter 2 proceedings can be quicker, cheaper, and more

6

convenient than Chapter 1 proceedings. In some countries, including France, the parties can make use of Article 17 of the Convention, which provides that a commissioner can take evidence without compulsion if the foreign state has given permission, generally or in the particular case. *See* Convention art. 17. France allows evidence to be taken in this way. *See* France declarations, *available at* https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=501&disp=resdn. In Germany, taking evidence on commission is also permissible, but the practice is to make use of Article 15 rather than Article 17 of the Convention. Under Article 15, a U.S. consular official can take testimony on commission. There is a well-defined path to use of Article 15, involving reservation of a time with the U.S. consulate, a request by the consulate to the German authorities for permission, etc., spelled out in materials published by the U.S. embassy in Berlin on its website (https://de.usembassy.gov/judicial-assistance/).

The Court may issue commissions under Fed. R. Civ. P. 28(b)(2). The party seeking the evidence, usually through its local counsel in the relevant jurisdictions, then submits the commission and an application to the appropriate authority (i.e., the *Service Civil de l'Entraide Judiciaire Internationale, Ministère de la Justice* in France) to take the evidence. Once permission is granted, the commissioner can then take the evidence in accordance with the terms of the commission and any limitations imposed by the foreign state. Issuance of a commission is discretionary, but refusing to issue a commission when the refusal deprives a party of the chance to substantiate its factual allegations may be an abuse of discretion. *See In re Complaint of Bankers Trust Co.,* 775 F.2d 545, 547 (3d Cir. 1985) (refusal to issue commission was abuse of discretion because it denied a party's opportunity to substantiate factual allegations and precluded development of adequate evidentiary record).

## III. THE COURT SHOULD ISSUE THE LETTERS OF REQUEST

Defendants seek highly material documentary and testimonial evidence related to the question of whether the Asserted Patents are invalid in light of prior art publications relating to Colzuphalt and Cecabase RT. Defendants seek essentially two categories of documents and testimony relating to the foregoing. The first category relates to actual prior art publications (and information relating thereto) that Defendants have not yet been able to obtain, but that likely were publicly available and disseminated by DGA Group or Arkema in Europe in the mid-2000s. The second category of discovery seeks documents and testimony that provide context and details regarding, for example, the compositions of and uses of Colzuphalt and Cecabase RT prior to February 2008. While those documents and testimony themselves may not alone invalidate the Asserted Patents (because they are not themselves prior art publications), any context they provide goes directly to the question of whether the Asserted Patents are anticipated under Section 102 of the Patent Act or rendered obvious under Section 103 of the Patent Act. *See Diogenes Limited et al v. DraftKings Inc.*, 1-21-cv-01695, D.I. 162 (D. Del. Mar. 4, 2024) (granting opposed motion for issuance of letters of request seeking evidence about prior art systems, and recognizing that documents and testimony that themselves may not be prior art are nonetheless relevant to determining the features and characteristics of technology disclosed in the prior art).[4] This Court has repeatedly granted requests to issue letters of request pursuant to the Convention that seek precisely this sort of contextual information regarding prior art. *See LEO Pharma A/S et al. v. Actavis Laboratories UT, Inc.*, 1:16-cv-00333-JFB-SRF, D.I. 168 at 15-19 (D. Del. Oct. 23, 2017) (granting request for issuance of letters of request that sought, among other things, documents and testimony regarding the scope and content of prior art relevant to defenses of invalidity);

---

[4] A copy of this text order is attached as **Exhibit G.**

8

*GlaxoSmithKline Intell. Prop. Ltd. et al. v. Sandoz Inc.*, 1:11-cv-01284-RGA, D.I. 173 at 5 (D. Del. Feb. 19, 2013) (granting request for issuance of letters of request seeking testimony regarding, among other things, the teachings in prior art references).[5]

Defendants' requests are also proportional to the needs of this case. Defendants are only seeking information sufficient to detail the prior art use, as disclosed in prior art publications, of Colzuphalt and Cecabase RT. Publications regarding the composition and preparation of asphalt paving materials containing those additives and records related to roadway paving projects utilizing those additives are of the type regularly maintained in the ordinary course of business by asphalt manufacturing companies and paving contractors. Testimony sought through Defendants' requests can also authenticate documents obtained through these requests to establish their admissibility as business records.

Defendants are unaware of any other reasonable means of accessing the information sought through the letters of request, as this discovery appears to be in the exclusive possession, custody and control of DGA Group and Arkema. Further, Defendants are not merely seeking documents or printed publications that can currently be obtained from public sources, or that have already been produced by Plaintiffs. *Cf. Purdue Pharma Prod. L.P. v. Par Pharms., Inc.*, No. CIV.A.07-255-JJF, 2008 WL 3926158, at *2 (D. Del. Aug. 26, 2008) (declining to grant letters of request that sought information that was publicly available, and "especially in light of the fact that much of the information sought has already been produced").[6] Because of the passage of time, Zydex

---

[5] Copies of these issued letters of request are attached as **Exhibits H and I**, respectively.

[6] During prosecution of at least the application that was later issued as U.S. Patent No. 7,815,725, certain publicly available materials from Arkema were submitted. Defendants do not seek re-production of any of those materials; Defendants are seeking only documents and testimony from Arkema relating to particular uses of Cecabase RT that were not before the U.S. Patent Office during prosecution of any of the Asserted Patents.

has not been able to obtain documents such as advertisements, public bulletins and reports of project details, or other such documents relating to Colzuphalt or Cecabase RT that were publicly available in the mid-2000s but now appear to be difficult or impossible to obtain except from the original sources of those materials.

**IV.     THE COURT SHOULD ISSUE THE COMMISSIONS.**

In addition to issuing the letters of request, which will be used if DGA Group and/or Arkema are unwilling to provide discovery voluntarily, the Court should also issue the requested commissions, which will be used if the foreign firms are willing to provide discovery voluntarily. Each commission has been drafted with the requirements of the relevant foreign state in mind, and each specifies in some detail the procedures to be followed. The commission for use in Germany carefully follows the requirements published by the U.S. embassy in Germany (https://de.usembassy.gov/judicial-assistance/).

**V.     CONCLUSION**

A proposed order granting relief accompanies this motion, along with the proposed letters of request and commissions. Defendants respectfully request that the Court grant this Motion for Issuance of Letters of Request and Commissions and that the Court approve, date, sign, and seal the proposed Letters of Request and Commissions.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

| | |
|---|---|
| OF COUNSEL: | By: */s/ Andrew M. Moshos*<br>David E. Moore (#3983) |
| Andrew Gish | Bindu A. Palapura (#5730) |
| Edward L. Tulin | Andrew M. Moshos (#6685) |
| Conor McDonough | Malisa C. Dang (#7187) |
| Ray Bilderbeck | Hercules Plaza, 6th Floor |
| GISH PLLC | 1313 N. Market Street |
| 41 Madison Avenue, Floor 31 | Wilmington, DE 19801 |
| New York, NY 10010 | Tel: (302) 984-6000 |
| Tel: (212) 518-7380 | dmoore@potteranderson.com |
| | bpalapura@potteranderson.com |
| | amoshos@potteranderson.com |
| | mdang@potteranderson.com |

Dated: July 16, 2024
11634154 / 23812.00001

*Attorneys for Defendants Zydex Industries Private Limited and Zydex Inc.*

11