**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

A.L.M. HOLDING COMPANY and
ERGON ASPHALT & EMULSIONS, INC.,

     Plaintiffs,

          v.

ZYDEX INDUSTRIES PRIVATE LIMITED
and ZYDEX INC.,

     Defendants.

C.A. No. 24-363-JPM

**JURY TRIAL DEMANDED**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
ISSUANCE OF LETTERS OF REQUEST AND COMMISSIONS FOR THE TAKING
OF EVIDENCE ABROAD**

**I.      INTRODUCTION**

Before Defendants Zydex Industries Private Limited and Zydex Inc. (collectively

"Zydex") filed their Motion for Issuance of Letters of Request and Commissions for the

Taking of Evidence Abroad (D.I. 68), Zydex sent Plaintiffs draft motion papers revealing

Zydex's basic misunderstanding of the law.  Specifically, those draft papers demonstrated

Zydex's erroneous belief that use, knowledge, or sale outside of the United States before the

inventions of the patents-in-suit is prior art in this case.  It is not.  Outside of the United States,

only "printed publications" and foreign patents are considered prior art.  Zydex acknowledged

its error in a subsequent meet and confer between the parties, but it nevertheless filed its

motion seeking the Court's assistance in obtaining non-public documents and testimony of use,

knowledge, or sale of products in Europe.

Having failed in its draft brief to identify the specific information it claims is relevant,

Zydex identified "Colzuphalt" and "Cecabase RT" during the parties' meet and confer, which

it referenced briefly in its as-filed motion papers.  However, when asked during the meet and

confer how those two products allegedly serve as prior art to the claims (which is what Zydex implied in its draft brief), Zydex refused to say.  In addition, when asked during the meet and confer how any information about Colzuphalt or Cecabase RT was not cumulative of prior art already submitted among the hundreds of prior art refences considered by the Patent Office, Zydex again refused to answer.

Plaintiffs oppose Zydex's motion because Zydex has not demonstrated the relevance of the non-prior art foreign information it seeks to discover.  Moreover, Zydex should not be permitted to take such broad and irrelevant discovery, which would only serve to substantially increase the costs of this litigation, burden the German and French authorities, and burden German and French non-party entities and witnesses.

## II.    BACKGROUND AND FACTS

Before filing its motion, Zydex forwarded to Plaintiffs' counsel a draft brief in support of its proposed motion and proposed letters rogatory and commissions, all of which made clear that Zydex misunderstood the law applicable in this case.  In Exhibit C to their proposed motion papers (i.e., the proposed Commission to the German authorities), Zydex stated as follows:

> Under Title 35, Section 102(a)(1) of the United States Code, a person is not entitled to a patent if the claimed invention was "described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."

Ali Decl. (filed concurrently herewith) at Ex. 1 (Zydex's Draft Brief) at Ex. C, unnumbered p. 2.

That is not an accurate statement of the law in this case.  The law that applies in this case is the pre-America Invents Act ("AIA") version of 35 U.S.C., which provides:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

2

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States

35 U.S.C. § 102(a)-(b) (2002). Under the applicable pre-AIA version of the law, knowledge, use, or sale outside of the United States is not prior art; only printed publications and foreign patents are considered prior art. Plaintiffs' counsel wrote to Zydex's counsel explaining their misunderstanding of the law with the hope that Zydex would not follow through with its motion to seek the irrelevant discovery of knowledge, use, or sale in Europe. Ali Decl., Ex. 2.

In addition, Zydex also stated in its draft motion papers that "[p]ublicly available information indicates that, prior to January 1, 2008, companies based in Germany (i.e., DGA Group) and in France (Arkema) had already developed and publicly used the asphalt compositions and methods claimed in the Asserted Patents." Ali Decl., Ex. 1 at unnumbered page 2. Because Zydex did not identify in its draft papers what "publicly available information" allegedly justified the claim that DGA Group and Arkema had already made the inventions of Plaintiffs' patents by 2008, in its as-filed motion, Zydex identified Colzuphalt and Cecabase RT as the "publicly available" information that it apparently believes invalidates the patents-in-suit. However, as explained below, Zydex provided no analysis whatsoever to back up that claim and did not even attempt to make such a showing because it simply cannot do so.

## III.   ARGUMENT

### A. Zydex Must Show the Proposed Foreign Discovery to be Relevant and to Satisfy Other Considerations of International Comity.

Zydex disregards critical authority related to its motion. A party seeking application of the Hague Evidence Convention bears the burden of persuading the trial court of the necessity of permitting the discovery pursuant to this method. *See Pronova BioPharma Norge AS v. Teva*

3

*Pharmaceuticals USA, Inc.*, 708 F. Supp. 2d 450, 452 (D. Del. 2010); *Purdue Pharma Products L.P. v. Par Pharmaceuticals, Inc.*, 2008 WL 3926158, *2 (D. Del. 2008). The moving party must demonstrate that the discovery sought is relevant. *See Seoul Semiconductor Co. Ltd. v. Nichia Corp.*, 590 F. Supp. 2d 832, 835 (E.D. Tex. 2008); *see also Purdue Pharma*, 2008 WL 3926158, at *2. (denying accused infringer's motion for a letter rogatory to obtain discovery under the Hague convention of a non-party German corporation where requested discovery regarding corporation's work with certain subject matter did not appear to be relevant to material that would qualify as prior art to the U.S. patent at issue).

The movant must also establish the requested discovery "is not unduly burdensome to a foreign party*." Seoul Semiconductor*, 590 F. Supp. 2d at 835. In deciding whether to issue a Letter of Request under the Hague Evidence Convention, the United States Supreme Court has established that a court should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Societe Nationale Industrielle Aerospatiale et al. v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 546 (1987). The Supreme Court explained that courts must supervise discovery "to minimize its costs and inconvenience and to prevent improper uses of discovery requests." *Aerospatiale*, 482 U.S. at 546; *see also Route1 Inc. v. AirWatch LLC*, No. 1:17-CV-00331-RGA, 2018 WL 6427145, at *1 (D. Del. Dec. 7, 2018) ("Letters rogatory are a complicated, dilatory and expensive system.").  In deciding whether to allow such a request, courts must consider international comity and "demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operation, and for any sovereign interest expressed by a foreign state." *Aerospatiale*, 482 U.S. at 546.  "The exact line between reasonableness and unreasonableness in

each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke." *Id.*

In performing that comity analysis, courts should consider: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Id.* at 544 n.28.

As explained below, in analyzing the foreign discovery Zydex requests, the weight of these factors necessitates that Zydex's motion be denied.

### B.  The Proposed Foreign Discovery Zydex Seeks is Irrelevant.

District courts, including this Court, routinely deny motions for foreign discovery if the requested discovery is irrelevant. *See, e.g., Ingenico Inc. v. Ioengine, LLC*, No. 18-826, 2021 WL 765757, at *4 (D. Del. Feb. 26, 2021) (denying motion where movant "ha[d] not carried its burden of demonstrating the necessity and reasonableness of permitting discovery pursuant to the Hague Convention."); *Seoul Semiconductor,* 590 F. Supp. 2d at 837 (denying motion where "Defendants can acquire much of the desired information through other means"); *Cywee Grp. Ltd. v. Huawei Device Co. Ltd.*, No. 2-17-CV-495, 2018 WL 4100763, at *2 (E.D. Tex. Jul. 13, 2018) (denying motion because movant's "conclusory assertion" failed to justify such a "sweeping" and "extremely broad" discovery request).

The *Purdue Pharma* case from this district is illustrative.  In that case, the defendants moved for the issuance of a letter of request for documents and deposition testimony from an

employee of a non-party German company.  The documents and deposition testimony related to the use of a drug, namely, tramadol, in Germany.  2008 WL 3926158 at *1-2.  This Court began its analysis by discussing the standards applicable to the requested foreign third-party discovery, including that the party moving for the foreign discovery bears the burden of persuading the court of its necessity and relevance.  *Id.*  The court must limit the frequency and extent of discovery that can be obtained from sources less burdensome or less expensive, or if it determines that the burden or expense of the proposed discovery outweighs its likely benefit.  *Id.* at *2 (citing Fed. R. Civ. P. 26(b)).

The plaintiffs in *Purdue Pharma* claimed that the use of tramadol in Germany was irrelevant because, under the pre-AIA version of the Patent Act applicable in that case (and this case), foreign knowledge or use was irrelevant to the issue of invalidity.  The defendants argued that foreign knowledge and use by others was relevant.  This Court disagreed and denied the motion:

> After reviewing the parties' contentions, the Court is unpersuaded that a letter of request under the Hague Convention is warranted in these circumstances.  As Plaintiffs contend, to the extent that Defendants seek foreign patents and publications related to controlled-release tramadol—which are prior art, see 35 U.S.C. 102(a)—Defendants can do so on its own and without burdening the German Court, Grunenthal, or Defendants.  To the extent that Defendants seek more general evidence of Grunenthal's possible knowledge of or use of tramadol, which is not prior art, the Court concludes that this information is too peripherally relevant to the matter at issue to justify issuing a letter of request under the Hague Convention.  Similarly, the Court concludes that Defendants' proposed examination topics for Dr. Paques are too peripherally relevant to Defendants' defense of patent invalidity to justify the burden they would pose to Dr. Paques, a foreign non-party individual.  *See* Fed. R. Civ. P. 26(b).

*Id.* at *2.

6

Here, like the defendants in *Purdue Pharma*, Zydex seeks documents and discovery related to the use of Colzuphalt in Germany and Cecabase RT in France generally. As Zydex states:

> Zydex believes that these additives were extensively used in Europe prior to the priority dates of the patents at issue in this lawsuit, that there are prior art publications relating to these additives exclusively in the possession of DGA Group and Arkema, and that the documents and testimony sought will demonstrate that the patents asserted in this lawsuit are invalid.

Motion, D.I. 68 at 1-2. After Plaintiffs brought the *Purdue Pharma* case to Zydex's attention, Zydex tried to justify its request by suggesting that it actually seeks the discovery to look for "prior art publications." Motion, D.I. 68 at 8. But only ***publicly available*** printed publications would be prior art, which Zydex can find in the public domain without resort to foreign discovery. Any other documents within the exclusive possession of the German and French entities, such as communications with foreign regulatory authorities or proprietary technical documents, would not be prior art and, of course, any testimony about the use of Colzuphalt or Cecabase RT also would not be prior art. In short, the only foreign documents that could be prior art in this case can be obtained in the public domain, and anything else is irrelevant, just as the *Purdue Pharma* court ruled.

In addition, while Zydex misleadingly suggests in its motion that it seeks information relating to "prior art publications," it is not actually seeking the publicly available printed publications themselves. Instead, Zydex improperly seeks information about foreign use, knowledge, or sale of the Colzuphal and Cecabase RT products. Indeed, as to its proposed discovery to DGA, ***Zydex is not seeking documents at all***. Zydex's proposed discovery to DGA, all of it being only testimony, states as follows:

7

<u>SCHEDULE 1</u>
<u>Topics for Testimony from DGA Group</u>

1.     State your name, profession, employer, professional title, and business address.

2.     How was Colzuphalt used in connection with the project with reference code FE 07.203/2002/CRB?

3.     Prior to December 31, 2007, what data or other information was submitted to Bundesanstalt für Straßenwesen ("BASt") as part of the qualification process for Colzuphalt?

4.     What was the chemical composition for Colzuphalt sold by DGA Group between January 1, 2001 to December 31, 2007? Does Colzuphalt that is offered for sale commercially by DGA Group today have that same chemical composition?

5.     What was the chemical composition for Colzuphalt used in the test sections on the B106 in connection with the project with reference code FE 07.203/2002/CRB? Does Colzuphalt that is offered for sale commercially by DGA Group today have that same chemical composition?

6.     When did DGA first start marketing and/or publicizing the warm mix/warm asphalt compaction capabilities (also known as "temperature reduced rolled asphalt") of Colzuphalt? Prior to December 31, 2007, what marketing materials did DGA utilize to promote the warm mix capabilities of Colzuphalt?

7.     Which DGA Group customers have used Colzuphalt for warm-mix or warm-compaction asphalt applications (also known as "temperature reduced rolled asphalt") prior to December 31, 2007?

8.     Prior to December 31, 2007, what were the typical mix and compaction temperatures for Colzuphalt sold by DGA Group when used as an asphalt additive?

9.     Prior to December 31, 2007, how did DGA Group advertise, publish, or otherwise publicized the warm mix capabilities (also known as "temperature reduced rolled asphalt") of Colzuphalt when used as an asphalt additive? What were those advertisements or publications, how were they distributed or disseminated, and to whom were they distributed or disseminated?

10.    Prior to December 31, 2007, did DGA Group advertise, publish, or otherwise publicize the typical mix and compaction temperatures for Colzuphalt sold by DGA Group when used as an asphalt additive? If so, what were those advertisements or publications, how were they distributed or disseminated, and to whom were they distributed or disseminated?

D.I. 68-02, Ex. A at 19.  None of this is prior art.  Only documents – specifically printed publications - could qualify as prior art.  Thus, the discovery Zydex seeks is entirely irrelevant.

Although the proposed discovery to Arkema includes requests for documents and testimony, it is also irrelevant.  Here are the documents Zydex seeks from Arkema:

8

SCHEDULE 2

1.      The technical data sheets for Cecabase RT additives used for the mixture or optimization of asphalt compositions or products, for all periods from January 1, 2001 to December 31, 2007.

2.      The safety data sheets for Cecabase RT additives used for the mixture or optimization of asphalt compositions or products, for all periods from January 1, 2001 to December 31, 2007.

3.      Documents showing the temperatures at which any bituminous or asphalt composition containing Cecabase RT was mixed, produced, prepared, compacted or laid prior to December 31, 2007, and any instructions relating thereto.

4.      Documents identifying any public works projects in which any bituminous or asphalt composition containing Cebabase RT was compacted or laid down prior to December 31, 2007.

5.      Documents identifying any customers or purchasers of Cecabase RT that are known to have mixed, produced, prepared, compacted, or laid down bituminous or asphalt compositions containing Cecabase RT at temperatures at or below 140 °C prior to December 31, 2007.

6.      Documents identifying the components and quantities of any bituminous or asphalt compositions containing Cecabase RT that were mixed, produced, prepared, compacted, or laid down at temperatures at or below 140 °C prior to December 31, 2007.

7.      Any applications submitted to French governmental authorities or regulatory agencies for approval of Cecabase RT as a warm-mix asphalt additive.

8.      Marketing materials relating to the use of Cecabase RT in connection with (i) foamed warm-mix production or compaction asphalt applications; and (ii) non-foamed warm-mix production or compaction asphalt applications that were disseminated, distributed, or sent to someone outside of Arkema Group prior to December 31, 2007.

9.      Any printed publications, including any articles, books (or portions thereof), presentations, patents, patent applications, white papers, or other similarly published materials that relate to any of the foregoing requests, and that were published prior to December 31, 2007.

10.     Documents relating to the Peirre Pottier Prize in the category "chemistry for the service of the environment" that Arkema Group won for Cecabase RT, including any documents submitted by Arkema Group in connection therewith.

D.I. 68-02, Ex. B at 32.  Only one request, Request No. 9, is for "printed publications."  But as the *Purdue Pharma* court correctly noted, to the extent such documents exist, they would be in the public domain, and neither the French courts nor Arkema should be troubled by a request for production of such publicly available documents.

The remainder of the foreign discovery sought by Zydex, whether in the form of documents or testimony, is also irrelevant.  For example, documents relating to temperatures at which compositions were mixed relate to use, which is not prior art.  The same goes for the other

9

requests, including submissions to foreign authorities and communications with customers.  Of course, Zydex has no reason to know Arkema's customers who may have used Cecabase RT. Either information about Cecabase RT is contained in printed publications or it is not, and only printed publications would be relevant.  Other documents and testimony are irrelevant and therefore not the proper subject of a Letter of Request under the Hague Evidence Convention.[1]

### C. Aside from Failing to Demonstrate the Relevance of the Proposed Foreign Discovery, Zydex Has Failed to Satisfy Other Considerations.

As stated above, in deciding a motion for request to take international discovery, courts should consider: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Aerospatiale*, 482 U.S. at 544 n. 28. Here, Zydex has not only failed to show the relevance—and thus—the importance of the discovery it seeks, but it has failed to satisfy the other comity considerations at issue.

As shown *supra*, the discovery sought by Zydex is extremely broad and not specific to the issues in this lawsuit at all, failing the second factor.  Regarding the information sought from DGA, it does not include documents whatsoever, and only documents in the form of printed

---

[1] Zydex misleadingly implies that it needs foreign discovery to authenticate documents.  Motion, D.I. 68 at 9 ("Testimony sought through Defendants' requests can also authenticate documents through these requests to establish their admissibility as business records.")  However, Zydex has not asked Plaintiffs to stipulate to the authenticity of any publications, such as journal articles. Should Zydex uncover any relevant printed publications in this case, Plaintiffs would be willing to consider any request to stipulate to their authenticity.

publications or foreign patents are potentially prior art. And the broad and vast information sought from Arkema, both documents and testimony, is likewise irrelevant and unwarranted.

As to the third factor (whether the information sought to be discovered originated in the United States), when it comes to knowledge, use, or sale under Section 102 of the Patent Act, only knowledge, use, or sale *in the United States* would be relevant for prior art purposes. All the discovery that Zydex seeks as to knowledge, use, or sale *in Europe* is irrelevant because it does not qualify as prior art. Thus, noncompliance with the proposed discovery would not undermine the interests of the United States under the fifth factor because knowledge, use, or sale of Colzuphalt or Cecabase RT *outside the United States* is irrelevant.

Finally, as to fourth factor of whether there are alternative means available to Zydex to pursue publicly available printed publications, Zydex offers no explanation of what efforts it has undertaken to obtain any publicly available printed publications. It implies that there are "prior art publications . . . exclusively in the possession of DGA Group and Arkema," but does not explain what this means. *See* Motion, D.I. 68 at 2. To the extent the information is not public, it would not qualify as "printed publications" under the law. To the extent it is public, then Zydex should explain why it cannot find those documents in the public domain.

In addition, Arkema has a U.S.-based subsidiary. According to its website, it has dozens of facilities throughout the United States:

## Locations

Arkema Inc. has over two dozen facilities throughout the United States, supplying industries with specialized solutions and improved applications.

https://www.arkema.com/usa/en/.  Zydex has not only failed to explain what measures it has taken to find printed publications relating to Cecabase RT short of taking international discovery from Arkema in France, it has failed to explain why it has not requested this information from the U.S.-based subsidiary of Arkema, which it can do without having to burden this Court and the Central Authority in France.

In addition, there are several Cecabase RT-related documents already in the file histories of the patents-in-suit.  Among the Cecabase-RT related patents and printed publications in the file histories of the patents are:

- 2009/0088499 A1 Barreto et al.

- WO 2006/106222 Barreto et al.

- Barreto, "Warm Asphalt Mixes Containing Dispersed Water, ARKEMA-CECA France, Abstract No. 658, 2006, 7 pp.

- Ceca Arkema Group, "Green Road Formulation-Warm Mix Asphalt Mix.  2007 Innovation: helping to lower our planet's temperature," www.siliporite.com, accessed Nov. 21, 2007, 1 pg.

All of these patents or printed publications are cited in each of the patents-in-suit. *See* D.I. 1-1, 1-2, 1-3, 1-4, 1-5, and 1-24 at Page 1-3 in each document respectively.   As stated above, during the parties' meet and confer, Zydex could not explain why any of the printed publications it seeks through the proposed international discovery to Arkema France would not be cumulative to this prior art already considered by the Patent Office.  Ali Decl., Ex. 3.  In fact, Zydex acknowledged that it was not aware of the above Cecabase RT prior art considered by the United States Patent and Trademark Office.  In recapping the meet and confer, Plaintiffs wrote:

> I asked in particular if Zydex agrees that the CECABASE-RT information Zydex seeks to discover in France is cumulative to prior art that was already considered by the Patent Office.  You said that you were not aware of any CECABBASE-RT prior art.  Thus, attached for your consideration is just one page of one of the patents-in-suit referencing 4 separate CECABASE-RT-related references, which I've highlighted for you in the document.  To reiterate, Plaintiffs do not believe it's appropriate to go through the time, trouble, and expense of burdening foreign authorities and foreign non-parties for prior art that was already before the Patent Office.

*See* Ali Decl., Ex. 3.

Plaintiffs not only confirmed that Defendants had not looked at any of the Cecabase-RT-related references provided to the Patent Office, but Plaintiffs also identified those references for Zydex's counsel, highlighting them in one of the patents-in-suit:

US 7,815,725 B2

Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,025,945 A | 12/1935 | Forrest | |
| 2,046,902 A | 7/1936 | Kirschbraun | |
| 2,087,401 A | 7/1937 | Fair | |
| 2,191,295 A | 2/1940 | Dohse et al. | |
| 2,243,519 A | 5/1941 | Barth | |
| 2,283,192 A | 5/1942 | Ditto | |
| 2,317,959 A | 4/1943 | Johnson et al. | |
| 2,340,449 A | 2/1944 | Barwell | |
| 2,427,488 A | 9/1947 | Anderson et al. | |
| 2,461,971 A | 2/1949 | Fischer | |
| 2,550,481 A | 4/1951 | Jense | |
| 2,861,787 A | 11/1958 | Csanyi | |
| 2,888,418 A * | 5/1959 | Albanese et al. | 427/213 |
| 2,901,369 A | 8/1959 | Otto Pordes | |
| 2,917,395 A | 12/1959 | Csanyi | |
| 3,855,167 A * | 12/1974 | Bowman | 523/208 |
| 3,904,428 A | 9/1975 | McConnaughay | |
| 4,197,209 A * | 4/1980 | Zinke et al. | 508/430 |
| 4,234,346 A | 11/1980 | Latta, Jr. et al. | |
| 4,244,747 A | 1/1981 | Leonard, Jr. et al. | |
| 4,348,237 A | 9/1982 | Ruckel | |
| 4,592,507 A | 6/1986 | Benedict | |
| 4,692,350 A | 9/1987 | Clarke et al. | |
| 4,724,003 A | 2/1988 | Treybig et al. | |
| 5,109,041 A | 4/1992 | Matsuno et al. | |
| 5,539,029 A | 7/1996 | Burris | |
| 5,622,554 A * | 4/1997 | Krogh et al. | 106/284.06 |
| 5,721,296 A | 2/1998 | Mizunuma et al. | |
| 5,772,749 A | 6/1998 | Schilling et al. | |
| 5,788,755 A | 8/1998 | Salminen | |
| 5,827,360 A | 10/1998 | Salminun | |
| 6,136,898 A | 10/2000 | Loza et al. | |
| 6,197,837 B1 | 3/2001 | Hill et al. | |
| 6,451,885 B1 | 9/2002 | Dresin et al. | |
| 6,559,206 B1 | 5/2003 | Durand et al. | |
| 6,576,050 B1 | 6/2003 | Samanos | |
| 6,588,974 B2 | 7/2003 | Hildebrand et al. | |
| 6,793,964 B2 | 9/2004 | Hoad | |
| 6,846,354 B2 | 1/2005 | Larsen et al. | |
| 6,913,416 B2 | 7/2005 | Hildebrand et al. | |
| 7,041,165 B2 | 5/2006 | Malot | |
| 7,114,843 B2 | 10/2006 | Romier et al. | |
| 7,114,875 B2 | 10/2006 | Romier et al. | |
| 7,160,943 B2 | 1/2007 | Burris et al. | |
| 7,297,204 B2 | 11/2007 | Crews et al. | |
| 7,309,390 B2 | 12/2007 | Falkiewicz | |
| 2002/0170464 A1 | 11/2002 | Larson et al. | |
| 2004/0014845 A1 | 1/2004 | Takamura et al. | |
| 2004/0223808 A1 | 11/2004 | Romier et al. | |
| 2004/0244646 A1 | 12/2004 | Larsen et al. | |
| 2005/0018530 A1 | 1/2005 | Romier et al. | |
| 2005/0284333 A1 * | 12/2005 | Falkiewicz | 106/284.1 |
| 2006/0086288 A1 | 4/2006 | Bourrel et al. | |
| 2006/0169173 A1 | 8/2006 | Dupuis et al. | |
| 2006/0236614 A1 | 10/2006 | Antoine et al. | |
| 2006/0240185 A1 | 10/2006 | Antoine et al. | |
| 2006/0288907 A1 | 12/2006 | Fox | |
| 2007/0039520 A1 | 2/2007 | Crews et al. | |
| 2007/0060676 A1 | 3/2007 | Reinke | |
| 2007/0082983 A1 | 4/2007 | Crews et al. | |
| 2007/0191514 A1 | 8/2007 | Reinke et al. | |
| 2009/0088499 A1 | 4/2009 | Barreto et al. | |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | 2006231250 | 4/2006 |
| EP | 0 568 021 A | 11/1993 |
| EP | 1398351 | 3/2004 |
| EP | 1263885 | 6/2004 |
| EP | 1469038 | 10/2004 |
| EP | 0994923 | 1/2006 |
| GB | 429548 | 5/1935 |
| JP | 2002-332606 | 11/2002 |
| JP | 2006132131 | 5/2006 |
| WO | 9522661 | 8/1995 |
| WO | 0162852 | 8/2001 |
| WO | WO 02/16499 | 2/2002 |
| WO | 2005081775 | 9/2005 |
| WO | 2006106222 | 10/2006 |
| WO | 2006106222 A1 | 10/2006 |
| WO | 2007/032915 | 3/2007 |
| WO | WO 2008/148974 A | 12/2008 |
| WO | WO 2009/033060 | 3/2009 |

### OTHER PUBLICATIONS

Barreto, "Warm Asphalt Mixes Containing Dispersed Water," ARKEMA-CECA France, Abstract No. 658, 2006, 7 pp.

Progress Report 2006, The German Bitumen Forum, Jun. 2006, 36 pp.

Goh et al., "Laboratory Evaluation and Pavement Design for Warm Mix Asphalt," Proceedings of the 2007 Mid-Continent Transportation Research Symposium, Ames, Iowa, Aug. 2007, 11 pp.

Diefenderfer et al., "Research Report: Installation of Warm Mix Asphalt Projects in Virginia," Virginia Transportation Research Council, Apr. 2007, 34 pp.

Hurley et al., "Evaluation of Potential Processes for Use in Warm Mix Asphalt," National Center for Asphalt Technology, 2006, 46 pp.

Hurley et al., "Evaluation of Aspha-Min® Zeolite for Use in Warm Mix Asphalt," National Center for Asphalt Technology Report, Auburn University, 30 pp., Jun. 2005.

Jones, "Warm Mix Asphalt Pavements: Technology of the Future?" Asphalt, Fall 2004, pp. 8-11.

Cervarich, "Cooling Down the Mix" NAPA Explores New "Warm Mix Asphalt" Technologies Developed in Europe, Hot Mix Asphalt Technology, Mar./Apr. 2003, pp. 13-16.

Caillot et al., "Warm Mix Asphalts and Cold Recycling for Controlled Use of Effective Road Techniques Reducing Nuisances," Technical Department for Transport, Roads, and Bridges, Engineering for Road Safety, Ministry for Transport, Infrastructure, Tourism and the Sea, France, 12 pp., not dated.

Kristjansdorttir, Warm Mix Asphalt for Cold Weather Paving, "Warm Mix Asphalt for Cold Weather Paving," a thesis, University of Washington, 2006, 127 pp.

Koenders et al., "Innovative process in asphalt production and application to obtain lower operating temperatures," 2nd Eurasphalt & Eurobitume Congress Barcelona 2000, Book II, pp. 830-840.

Hurley et al., "Evaluation of Evotherm® for Use in Warm Mix Asphalt," National Center for Asphalt Technology Report, Auburn University, Jun. 2006, 49 pp.

Jenkins et al., "Half-Warm Foamed Bitumen Treatment, A New Process," 7th Conference on Asphalt Pavements For Southern Africa, 1999, 7 pp.

Hurley et al., "Evaluation of Sasobit® for Use in Warm Mix Asphalt," National Center for Asphalt Technology Report, Auburn University, Jun. 2005, 32 pp.

Ceca Arkema Group, "Green Road Formulation-Warm Asphalt Mix. 2007 Innovation: helping to lower our planet's temperature," www.siliporite.com, accessed Nov. 21, 2007, 1 pg.

"Low Energy Asphalt (LEA) with the Performance of Hot-Mix Asphalt (HMA)", European Roads Review, Special Issue, BGRA, Feb. 2004 (pp. 1-11).

International Search Report issued in PCT/US2006/33907, mailed Sep. 24, 2007, 4 pages.

Gibson, Nelson, Modified Asphalt Research Activities at FHWA's Turner-Fairbank Highway Research Center (TFHRC), Pavement Materials and construction Team, AMAP Conference, Feb. 2005, Orlando, FL, 18 pages.

International Search Report for PCT/US2008/075452, mailed Feb. 13, 2009, 13 pages.

International Search Report for PCT/US2009/034742, mailed May 26, 2009, 10 pages.

* cited by examiner

14

*Id.* Nevertheless, Zydex still has not explained whether it is aware of that Cecabase-RT-related information, and whether the discovery it seeks to take in France is cumulative of this information already considered by the Patent Office.

In sum, Zydex has failed to show the relevance of the foreign discovery it seeks or that it has tried to seek any printed publications through means less burdensome than the proposed Letters of Request under the Hague Evidence Convention.

**D. Unlike the *Purdue Pharma* Case from this District, the Few Cases on Which Zydex Relies are Unavailing.**

While admitting that documents and testimony that Zydex seeks through its proposed discovery are not prior art, Zydex cites to three cases to justify its request to seek discovery of non-prior art. However, the *Diogenes* order cited by Zydex is an oral order of less than two pages lacking a meaningful discussion of facts, law, or analysis. The other two cases cited by Zydex, *LEO Pharma A/S* and *GlaxoSmithKline v. Sandoz*, involved motions for letters rogatory that were unopposed. Thus, the orders issued in those cases should be disregarded by the Court. The lack of authority from Zydex—not even a single reported decision—is telling.

While admitting that its requested discovery would not be prior art, Zydex nevertheless argues that it could provide "context." Motion, D.I. 68 at 8. But Zydex does not explain what "context" is needed. That is, context for what? Zydex has not produced any prior art for which context would be needed.

As stated, Zydex does not seek any documents from Germany. Apparently, it would like witness testimony to interpret its 2005 Damm reference. *See* McDonough Declaration, D.I. 69-01, Ex. E. But the Damm reference "is what it is" - if it does not disclose the elements or limitations of the patents-in-suit (it does not, which is why Zydex has provided no analysis of it relative any claim of the patents-in-suit), Zydex is free to try to have an expert fill in the gaps or

15

convince this Court or a jury that it means something other than what it says.[2]  Zydex should not be permitted to obtain witness testimony from Germany to try to "gap fill" or characterize the document.

As for the Cecabase RT discovery from France, what is the context needed for any Cecabase RT other than already provided by the prior art of record or any discovery from Arkema in the United States?

In short, Zydex has provided no legal authority to justify its motion or any basis for needing any theoretical "context". Thus, its motion should be denied.

## IV.    CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that Zydex's motion be denied.


Dated: July 30, 2024                                      Respectfully submitted,

                                                         By: */s/ John C. Phillips, Jr.*
                                                              John C. Phillips, Jr. (#110)
                                                              Megan C. Haney (#5016)
                                                              **PHILLIPS, MCLAUGHLIN &**
                                                              **HALL, P.A.**
                                                              1200 North Broom Street
                                                              Wilmington DE, 19806
                                                              302-655-4200 Telephone
                                                              302-655-4210 Facsimile
                                                              jcp@pmhdelaw.com
                                                              mch@pmhdelaw.com

---

[2] All the claims of the patents-in-suit include limitations relating to mix temperatures or compaction temperatures.  D.I. 1-1, 1-2, 1-3, 1-4, 1-5, and 1-24.  As is evident from the Damm 2005 reference itself, there is only one mix or binder system disclosed in that paper that included Colzuphalt.  D.I. 69-01, Ex. E (Section 3, "Viscosity-reducing binder systems"), at 77.  But in the only section of the paper discussing temperature measurements, there is no reference to the mix or binder system including Colzuphalt.  D.I. 69-01, Ex. E (Section 5 "Temperature measurements"), at 79.  That is, there is no indication from this 2005 Damm paper that the test section of road using Colzuphalt was used to modify the temperature of to make the mix or for compaction.

Jeffer Ali
jeffer.ali@huschblackwell.com
**HUSCH BLACKWELL LLP**
80 S. Eighth Street, Suite 4800
Minneapolis, MN 55402
612-852-3610 Telephone
612-852-2701 Facsimile

Stephen R. Howe
steve.howe@huschblackwell.com
**HUSCH BLACKWELL LLP**
511 N. Broadway, Suite 1100
Milwaukee, WI 53202
414-273-2100 Telephone
414-223-5000 Facsimile

*Attorneys for Plaintiffs A.L.M. Holding Company and Ergon Asphalt & Emulsions, Inc.*

17