# EXHIBIT A

<u>SCHEDULE 1</u>
<u>Topics for Testimony from Arkema</u>

1.      State your name, profession, employer, professional title, and business address.

2.      Were the documents produced by Arkema Group pursuant to Schedule 2 of this Letter of Request made at or near the time of the acts, events, conditions, or opinions that they reflect by, or from information transmitted by, someone with knowledge?

3.      Were the documents produced by Arkema Group pursuant to Schedule 2 of this Letter of Request kept in the course of Arkema Group's regularly conducted activities, or in the course of the regularly conducted activities of the entity from whom Arkema Group obtained the documents?

4.      Was the making of such records a regular practice of those regularly conducted activities?

5.      To the extent that Arkema Group produced any documents in response to Schedule 2 of this Letter of Request, please describe how, if at all, any members of the public would have been able to access those documents between January 1, 2005 and December 31, 2007.

SCHEDULE 2
Documents Requested from Arkema

1.      The technical data sheets and safety data sheets for Cecabase RT additives used for the mixture or optimization of asphalt compositions or products, that were publicly available or disseminated from January 1, 2005 to December 31, 2007.

2.      Marketing materials relating to the use of Cecabase RT in connection with non-foamed "warm-bituminous mix" production or compaction asphalt applications that were publicly disseminated, or distributed between January 1, 2005 and December 31, 2007.

3.      Any printed publications, including any articles, books (or portions thereof), presentations, patents, patent applications, white papers, or other similarly published materials that relate to the use of Cecabase RT for non-foamed "warm bituminous mix," and that were published between January 1, 2005 and December 31, 2007.

# EXHIBIT B

<u>SCHEDULE 1</u>
<u>Topics for Testimony from Arkema</u>

1.      State your name, profession, employer, professional title, and business address.

2.      Were the documents produced by Arkema Group pursuant to Schedule 2 of this Letter of Request made at or near the time of the acts, events, conditions, or opinions that they reflect by, or from information transmitted by, someone with knowledge?

3.      Were the documents produced by Arkema Group pursuant to Schedule 2 of this Letter of Request kept in the course of Arkema Group's regularly conducted activities, or in the course of the regularly conducted activities of the entity from whom Arkema Group obtained the documents?

4.      Was the making of such records a regular practice of those regularly conducted activities?

~~5.      Between January 1, 2004 and December 31, 2007, did~~ To the extent that Arkema Group ~~communicate with anyone outside of Arkema Group regarding the use of Cecabase RT additives in non-foamed warm-mix production and/or warm mix compaction asphalt applications? If so, who were the parties to the communications? When did they occur? What was the substance of the communications, in as much detail as is known to Arkema Group?~~

~~6.      Between January 1, 2004 and December 31, 2007, did Arkema Group provide technical data sheets, safety data sheets, or other technical documentation regarding Cecabase RT additives to anyone outside of Arkema Group that described or discussed its use in non-foamed warm-mix production or compaction asphalt applications? If so, what~~ produced any documents ~~were provided? When were they provided, and to whom?~~

~~7.      When did Arkema Group start marketing Cecabase RT for non-foamed warm-mix production or compaction asphalt applications?~~

~~8.      To the best of your knowledge, between January 1, 2004 and December 31, 2007, did any of your customers who purchased Cecabase RT use it as an additive in a non-foamed bituminous or asphalt composition that was mixed, produced, prepared, compacted, or laid down at temperatures at or below 140 ºC?  If so, please identify those customers and the projects in which Cecabase RT was used in that manner with dates of use.  What was the concentration of Cecabase RT in those mixtures?~~

~~9.      What production and compaction parameters (including the mix and compaction temperatures, and concentrations of Cecabase RT) were used for the public works project that BODIN company performed using Cecabase RT in Challans, France in 2007?~~

~~10.      Between January 1, 2004 and December 31, 2007, did you ever use Cecabase RT as an additive in non-foamed bituminous or asphalt composition that was mixed, produced, prepared, compacted, or laid down at temperatures at or below 140 ºC?  If so, when did those instances occur?  What was the concentration of Cecabase RT in those mixtures?  Did you publish any results or information from those uses?  If so, what were those publications?~~

~~11.      Between January 1, 2004 and December 31, 2007, what approvals, if any, were provided by governmental or regulatory agencies for the use of Cecabase RT for non-foamed~~

~~warm-mix production or compaction asphalt applications? If any such approvals were provided, what documents were submitted to governmental or regulatory agencies in connection therewith?~~

~~12.~~5.    ~~Between January 1, 2004 and December 31, 2007, were any test results, projects, demonstrations, or descriptions of uses of Cecabase RT as an additive in non-foamed bituminous or asphalt compositions that were mixed, produced, prepared, compacted, or laid down at temperatures at or below 140 ºC ever published in any books, articles, patents, patent applications, or other similarly published materials?  If so, what were those publications?  Have they been produced~~ in response to <u>Schedule 2 of</u> this Letter of Request~~? If not~~<u>, please describe</u> how ~~can they be obtained?~~<u>, if at all, any members of the public would have been able to access those documents between January 1, 2005 and December 31, 2007.</u>

SCHEDULE 2
Documents Requested from Arkema

1.      The technical data sheets and safety data sheets for Cecabase RT additives used for the mixture or optimization of asphalt compositions or products, that were publicly available or disseminated from January 1, ~~2004~~2005 to December 31, 2007.

~~2.      The safety data sheets for Cecabase RT additives used for the mixture or optimization of asphalt compositions or products, from January 1, 2004 to December 31, 2007.~~

~~3.      Documents showing the temperatures at which any non-foamed bituminous or asphalt composition containing Cecabase RT was mixed, produced, prepared, compacted or laid between January 1, 2004 and December 31, 2007, and any instructions relating thereto.~~

~~4.      Documents identifying any public works projects in which any non-foamed bituminous or asphalt composition containing Cecabase RT was compacted or laid down at temperatures at or below 140 ºC between January 1, 2004 and December 31, 2007.~~

~~5.      Documents identifying any customers or purchasers of Cecabase RT that are known to have mixed, produced, prepared, compacted, or laid down non-foamed bituminous or asphalt compositions containing Cecabase RT at temperatures at or below 140 ºC between January 1, 2004 and December 31, 2007.~~

~~6.      Documents identifying the components and quantities of any non-foamed bituminous or asphalt compositions containing Cecabase RT that were mixed, produced, prepared, compacted, or laid down at temperatures at or below 140 ºC between January 1, 2004 and December 31, 2007.~~

~~7.      Any applications submitted to French governmental authorities or regulatory agencies for approval of Cecabase RT as a warm-mix asphalt additive between January 1, 2004 and December 31, 2007.~~

~~8.~~2.    Marketing materials relating to the use of Cecabase RT in connection with non-foamed "warm-~~bituminous~~ mix" production or compaction asphalt applications that were publicly disseminated, or distributed~~, or sent to someone outside of Arkema Group~~ between January 1, ~~2004~~2005 and December 31, 2007.

~~9.~~3.    Any printed publications, including any articles, books (or portions thereof), presentations, patents, patent applications, white papers, or other similarly published materials that relate to ~~any~~the use of ~~the foregoing requests,~~Cecabase RT for non-foamed "warm bituminous mix," and that were published between January 1, ~~2004~~2005 and December 31, 2007.

4

# EXHIBIT C

## LETTER OF REQUEST

(Convention of 18 Mar 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters)

| 1. | Sender | Hon. Jon P. McCalla, U.S. District Judge<br>United States District Court for the District of Delaware<br>844 North King St<br>Wilmington, DE 19801 U.S.A. |
|---|---|---|
| 2. | Central Authority of the Requested State | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Département de l'entraide, du droit international privé et européen<br>(DEDIPE)<br>13, Place Vendôme<br>75042 Paris Cedex 01 |
| 3. | Person to whom the executed request is to be returned | Andrew D. Gish, Esq.<br>Gish PLLC<br>41 Madison Ave., Floor 31<br>New York, NY 10010 USA<br>andrew@gishpllc.com |
| 4. | Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request | |
| | Date | December 10, 2024 |
| | Reason for urgency | Under the current scheduling order in this Matter, the Court will hold a hearing related to the interpretation of claim terms on January 19, 2025.  To permit a reasonable time to obtain the requested information in advance of that deadline, the Requesting Authority defined below seeks an initial response by December 10, 2024. |

In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following request:

| 5. a | Requesting authority (Art. 3(a)) | United States District Court for the District of Delaware<br>844 North King St<br>Wilmington, DE 19801 U.S.A. |
|---|---|---|
| b | To the Competent Authority of (Art. 3(a)) | France |
| c | Names of the case and any identifying number | A.L.M. Holding Co. et al. v. Zydex Industries Private Limited, et al., No. 1:24-cv-00363-JPM (D. Del.) |

| 6. | Names and addresses of the parties and their representatives (including representatives in the Requested State) (Art. 3(b)) | |
|---|---|---|
| a | Plaintiff | A.L.M. Holding Co.<br>920 10th Ave. North<br>Onalaska, WI 54650 USA<br><br>Ergon Asphalt & Emulsions, Inc.<br>2829 Lakeland Dr.<br>Jackson, MS 39232 USA |
| a | Representatives | John C. Phillips, Jr.<br>Megan C. Haney<br>Phillips, McLaughlin & Hall, P.A.<br>1200 North Broom Street<br>Wilmington, DE 19806 U.S.A.<br>jcp@pmhdelaw.com<br>mch@pmhdelaw.com<br>+ 1 (302) 655-4200<br><br>Jeffer Ali<br>Husch Blackwell<br>80 S. Eighth Street<br>Suite 4800<br>Minneapolis, MN 55402 U.S.A.<br>jeffer.ali@huschblackwell.com<br>+1 (612) 852-3610<br><br>Stephen R. Howe<br>Husch Blackwell LLP<br>511 N. Broadway, Suite 1100<br>Milwaukee, WI 53202<br>Steve.howe@huschblackwell.com<br>+1 (414) 273-2100 |
| b | Defendants | Zydex Inc.<br>106 Kitty Hawk Drive<br>Morrisville, NC 27560 U.S.A.<br><br>Zydex Industries Private Limited<br>61A, Zydex House<br>Gotri, Sevasi Road<br>Gotri, Valdodara<br>39 0021<br>Gujarat, India |

3

| | Representatives | David E. Moore<br>Bindu Palapura<br>Andrew M. Moshos<br>Malia C. Dang<br>Potter Anderson & Corroon LLP<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801 U.S.A.<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com<br>amoshos@potteranderson.com<br>mdang@potteranderson.com<br>+1 (302) 984-6000<br><br>Andrew Gish<br>Edward L. Tulin<br>Conor McDonough<br>Raymond Bilderbeck<br>Darlena Subashi<br>Gish PLLC<br>41 Madison Ave., Floor 31<br>New York, NY 10010 USA<br>andrew@gishpllc.com<br>edward@gishpllc.com<br>conor.mcdonough@gishpllc.com<br>ray@gishpllc.com<br>darlena.subashi@gishpllc.com<br>+1 (212) 518-2000<br><br>The defendants are also represented, with respect to this letter of request only, by:<br><br>Theodore J. Folkman<br>Rubin and Rudman LLP<br>53 State St.<br>Boston, MA 02109 USA<br>+1 (617) 330-7135<br>tfolkman@rubinrudman.com |
|---|---|---|
| 7. a | Nature of the proceedings | Civil action for damages and injunctive relief alleging infringement of six U.S. patents. |
| b | Summary of complaint | The plaintiffs claim that the defendants have made, sold, and/or imported additives used to make either warm mix paving compositions for coating asphalt roads and surfaces or paving |

| | | |
|---|---|---|
| | | compositions that are applied and compacted at warm temperatures that allegedly infringe the plaintiffs' patents. |
| c | Summary of defense and counterclaim | The defendants deny that they have infringed the patents and assert that the patents are invalid because the claimed inventions are not novel, and because the plaintiffs are equitably estopped from asserting infringement, among other reasons. |
| d | Other necessary information or documents | |

| | | |
|---|---|---|
| 8. a | Evidence to be obtained or other judicial act to be performed (Art. 3(d)) | Testimony and documentary evidence from the person identified in item 9, below. |
| b | Purpose of the evidence or judicial act sought. | The evidence is sought for use at trial, and the defendant believes it will be material to the validity of the patents asserted by the plaintiffs. The testimony sought also includes questions intended to ensure that the documentary evidence will be admissible under the U.S. law of evidence, which requires that sufficient evidence of the authenticity of documents be offered before the documents may be admitted in evidence and which requires that  a sufficient foundation be laid to treat a document as a business record that may be admitted as the truth of what it asserts notwithstanding the ordinary rule forbidding the use of hearsay (that is, statements made out of court, when offered to prove the truth of the matter asserted). |

| | | |
|---|---|---|
| 9. | Identity and address of persons to be examined (Art. 3(e)) | Arkema Group (Siège social Arkema) 420 rue d'Estienne d'Orves 92705 Colombes<br><br>See also Item 13, which explains the special procedure requested to designate the person who will testify on Arkema Group's behalf. |

| | | |
|---|---|---|
| 10. | Questions to be put to the persons to be examined, or statements of the subject matter about which they are to be examined (Art. 3(f)) | See Schedule 1. |

5

| 11. | Documents or other property to be inspected (Art. 3(g)) | See Schedule 2 |

| 12. | Any requirement that the evidence be given on oath or affirmation and any special form to be used (Art. 3(h)) | The evidence should be given on oath or affirmation. No special form is required, but the oath or affirmation should be in a form designed to impress on the witness's conscience the duty to testify truthfully, as required for the admissibility of the testimony by Rule 603 of the Federal Rules of Evidence. A copy of this rule is included in Schedule 3. |

| 13. | Special methods or procedures to be followed (Arts 3(i) and 9) | The Requesting Authority respectfully requests that the appropriate judicial authority of France apply the following special procedures or methods in the taking of the testimony.<br><br>1. The testimony should be transcribed verbatim. If a verbatim transcript is not possible, an audio recording of the testimony should be made to allow for later transcription If an audio recording is used, the Requesting Authority defined above requests that the French court also provide a written record of the testimony in the form it would ordinarily use under French law.<br>2. After the judge or other appropriate official asks the questions on Schedule 1, counsel for each of the parties should be permitted to ask questions to clarify the witness's answers and to ask additional questions. Under US evidence law, statements of a non-party witness who is not testifying in person at the trial are hearsay and are, as a general matter, not admissible in evidence. There is an exception to this rule for witnesses whose appearance at trial cannot be obtained, which most likely will apply to the witness in this case, because the Requesting Authority defined above lacks the power to compel them to travel from France to testify. The exception applies when the party against whom the testimony is offered had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination," that is, when that party had the ability to question the witness. A copy of Rule 802 of the Federal Rules of Evidence, which states the general rule against hearsay, and an excerpt of Rule 804 of the Federal Rules of Evidence, which includes this exception, are included in Schedule 3.<br>3. The entity named as deponent should be required to designate a witness able to testify about the information requested in the questions attached in Schedule 1 that is |

| | | |
|---|---|---|
| | | known to the entity Under Rule 30(b)(6) of the Federal Rules of Civil Procedure, when an entity is named as a deponent, it "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." The rule also provides that "The persons designated must testify about information known or reasonably available to the organization." The relevant excerpt of Rule 30 of the Federal Rules of Civil Procedure is included in Schedule 3 |
| 14. | Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Art. 7) | The Requesting Authority respectfully requests that the representatives of the parties identified in Item 6 be given advance notification, by post and email, of the time and place for the execution of the request. |
| 15. | Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Art. 8) | Not applicable. |
| 16. | Specification of privilege or duty to refuse to give evidence under the law of the Requesting State (Art. 11(b)) | Under U.S. law, the most common evidentiary privileges are the attorney/client privilege, which privileges a witness to refuse to answer a question that calls for the disclosure of communications between a lawyer and his or her client made for the purpose of requesting or receiving legal advice, and the privilege against self-incrimination, which privileges a witness to refuse to answer any question if the answer might incriminate the witness. There are various other privileges in U.S. law, none of which are likely to have relevance on the facts of this case. |
| 17. | The fees and costs incurred which are reimbursable under the second paragraph of Article | The defendants |

|  | 14 or under Article 26 of the Convention will be borne by: |  |
|---|---|---|

| Date of request |  |
|---|---|
| Signature and seal of the Requesting Authority |  |

SCHEDULE 1
Topics for Testimony from Arkema

1.      State your name, profession, employer, professional title, and business address.

2.      Were the documents produced by Arkema Group pursuant to Schedule 2 of this Letter of Request made at or near the time of the acts, events, conditions, or opinions that they reflect by, or from information transmitted by, someone with knowledge?

3.      Were the documents produced by Arkema Group pursuant to Schedule 2 of this Letter of Request kept in the course of Arkema Group's regularly conducted activities, or in the course of the regularly conducted activities of the entity from whom Arkema Group obtained the documents?

4.      Was the making of such records a regular practice of those regularly conducted activities?

5.      To the extent that Arkema Group produced any documents in response to Schedule 2 of this Letter of Request, please describe how, if at all, any members of the public would have been able to access those documents between January 1, 2005 and December 31, 2007.

SCHEDULE 2
Documents Requested from Arkema

1.    The technical data sheets and safety data sheets for Cecabase RT additives used for the mixture or optimization of asphalt compositions or products, that were publicly available or disseminated from January 1, 2005 to December 31, 2007.

2.    Marketing materials relating to the use of Cecabase RT in connection with non-foamed "warm-bituminous mix" production or compaction asphalt applications that were publicly disseminated, or distributed between January 1, 2005 and December 31, 2007.

3.    Any printed publications, including any articles, books (or portions thereof), presentations, patents, patent applications, white papers, or other similarly published materials that relate to the use of Cecabase RT for non-foamed "warm bituminous mix," and that were published between January 1, 2005 and December 31, 2007.

<u>SCHEDULE 3</u>

**<u>Federal Rule of Evidence Rule 603. Oath or Affirmation to Testify Truthfully</u>**

Before testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience.

**<u>Federal Rule of Evidence Rule 802. The Rule Against Hearsay</u>**

Hearsay is not admissible unless any of the following provides otherwise:

   a federal statute;

   these rules; or

   other rules prescribed by the Supreme Court.

**<u>(Excerpt from) Federal Rule of Evidence Rule 804. Hearsay Exceptions; Declarant Unavailable</u>**

(a) Criteria for Being Unavailable. A declarant is considered to be unavailable as a witness if the declarant:

   (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;

   (2) refuses to testify about the subject matter despite a court order to do so;

   (3) testifies to not remembering the subject matter;

   (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

   (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

11

(A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or

(B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

But this subdivision (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying.

**(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

**(1) Former Testimony**. Testimony that:

(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

(B) is now offered against a party who had — or, in a civil case, whose predecessor in interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

\* \* \* \*


**(Excerpt from) Federal Rules of Civil Procedure Rule 30. Depositions by Oral Examination**

**(b) Notice of the Deposition; Other Formal Requirements.**

\* \* \* \*

(6) Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.

The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

# EXHIBIT D

## REQUEST FOR APPOINTMENT OF COMMISSIONER

(Convention of 18 Mar 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters)

| 1. | Sender | Hon. Jon P. McCalla, U.S. District Judge<br>United States District Court for the District of Delaware<br>844 North King St<br>Wilmington, DE 19801 U.S.A. |
|---|---|---|
| 2. | Authority of the Requested State | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Département de l'entraide, du droit international privé et européen<br>(DEDIPE)<br>13, Place Vendôme<br>75042 Paris Cedex 01 |
| 3. | Person to whom the executed request is to be returned | Alexander Blumrosen<br>Polaris Law<br>4, avenue Hoche<br>75008 Paris<br>+33 1 43 18 02 60<br>ablumrosen@polarislaw.eu |
| 4. | Specification of the date by which the requesting authority requires receipt of the response to the Request | |
| | Date | Within fourteen days or as soon thereafter as is practicable. |
| | Reason for urgency | Under the current scheduling order in this Matter, the Court will hold a hearing related to the interpretation of claim terms on January 19, 2025.  To ensure a commissioner can be appointed and prepared in sufficient time to proceed, the Requesting Authority defined below seeks an initial response within fourteen days of receipt of this Request, or as soon thereafter as is practicable. |

| 5. a | Requesting authority (Art. 3(a)) | United States District Court for the District of Delaware<br>844 North King St<br>Wilmington, DE 19801 U.S.A. |
|---|---|---|
| b | To the Competent Authority of (Art. 3(a)) | France |
| c | Names of the case and any identifying number | A.L.M. Holding Co. et al. v. Zydex Industries Private Limited, et al., No. 1:24-cv-00363-JPM (D. Del.) |

| 6. | Names and addresses of the parties and their representatives (including representatives in the Requested State) (Art. 3(b)) | |
|---|---|---|
| a | Plaintiff | A.L.M. Holding Co. <br> 920 10th Ave. North <br> Onalaska, WI 54650 USA <br><br> Ergon Asphalt & Emulsions, Inc. <br> 2829 Lakeland Dr. <br> Jackson, MS 39232 USA |
| | Representatives | John C. Phillips, Jr. <br> Megan C. Haney <br> Phillips, McLaughlin & Hall, P.A. <br> 1200 North Broom Street <br> Wilmington, DE 19806 U.S.A. <br> jcp@pmhdelaw.com <br> mch@pmhdelaw.com <br> + 1 (302) 655-4200 <br><br> Jeffer Ali <br> Husch Blackwell <br> 80 S. Eighth Street <br> Suite 4800 <br> Minneapolis, MN 55402 U.S.A. <br> jeffer.ali@huschblackwell.com <br> +1 (612) 852-3610 <br><br> Stephen R. Howe <br> Husch Blackwell LLP <br> 511 N. Broadway, Suite 1100 <br> Milwaukee, WI 53202 <br> Steve.howe@huschblackwell.com <br> +1 (414) 273-2100 |
| b | Defendants | Zydex Inc. <br> 106 Kitty Hawk Drive <br> Morrisville, NC 27560 U.S.A. <br><br> Zydex Industries Private Limited <br> 61A, Zydex House <br> Gotri, Sevasi Road <br> Gotri, Valdodara <br> 39 0021 <br> Gujarat, India |

|  | Representatives | David E. Moore<br>Bindu Palapura<br>Andrew M. Moshos<br>Malia C. Dang<br>Potter Anderson & Corroon LLP<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801 U.S.A.<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com<br>amoshos@potteranderson.com<br>mdang@potteranderson.com<br>+1 (302) 984-6000<br><br>Andrew Gish<br>Edward L. Tulin<br>Conor McDonough<br>Raymond Bilderbeck<br>Darlena Subashi<br>Gish PLLC<br>41 Madison Ave., Floor 31<br>New York, NY 10010 USA<br>andrew@gishpllc.com<br>edward@gishpllc.com<br>conor.mcdonough@gishpllc.com<br>ray@gishpllc.com<br>darlena.subashi@gishpllc.com<br>+1 (212) 518-2000<br><br>The defendant is also represented, with respect to this letter of request only, by:<br><br>Theodore J. Folkman<br>Rubin and Rudman LLP<br>53 State St.<br>Boston, MA 02109 USA<br>+1 (617) 330-7135<br>tfolkman@rubinrudman.com |
|---|---|---|
| 7. a | Nature of the proceedings | Civil action for damages and injunctive relief alleging infringement of six U.S. patents. |

| | | |
|---|---|---|
| b | Summary of complaint | The plaintiffs claim that the defendants have made, sold, and/or imported additives used to make either warm mix paving compositions for coating asphalt roads and surfaces or paving compositions that are applied and compacted at warm temperatures that allegedly infringe the plaintiffs' patents. |
| c | Summary of defense and counterclaim | The defendants deny that they have infringed the patents and assert that the patents are invalid because the claimed inventions are not novel and/or non-obvious, and because the plaintiffs are equitably estopped from asserting infringement, among other reasons. |
| d | Other necessary information or documents | |

| | | |
|---|---|---|
| 8. a | Evidence to be obtained or other judicial act to be performed (Art. 3(d)) | Subject to their willingness of the witness to appear without compulsion, the parties will question the following witness who is believed to have knowledge of matters relevant to the lawsuit:<br><br>Gilles Barreto<br>Global R&D Director Specialty Surfactants<br>Arkema Group (Siège social Arkema)<br>420 rue d'Estienne d'Orves<br>92705 Colombes<br><br>Subject to its willingness to produce documents, Arkema Group will also produce to the Commissioner for production to the parties in the U.S. litigation the documents identified on Exhibit 2. |
| b | Purpose of the evidence or judicial act sought. | The evidence is sought for use at trial, and the defendant believes it will be material to the validity of the patents asserted by the plaintiffs. |

| | | |
|---|---|---|
| 9. | Authority appointing commissioner, pending approval of the Ministry of Justice | Hon. Jon P. McCalla, U.S. District Judge<br>United States District Court for the District of Delaware<br>844 North King St<br>Wilmington, DE 19801 U.S.A. |
| 10. | Commissioner | Alexander Blumrosen<br>Polaris Law<br>4, avenue Hoche<br>75008 Paris<br>+33 1 43 18 02 60 |

|     |      | ablumrosen@polarislaw.eu<br><br>Attached as Exhibit 1 is the Commission appointing Mr. Blumrosen as commissioner, pending approval of the Ministry of Justice. |
| --- | ---- | --- |
| 11. | Costs | All costs of the Commissioner, the costs of translation, and any additional costs associated with the taking of evidence shall be borne by the Defendants, which are the parties seeking the evidence, provided that each party is responsible for the fees and expenses of its own attorneys. |

| 12. | Special methods or procedures to be followed | The Commission attached to this request as Exhibit 1 contains special procedures to be followed in the taking of depositions. |
| --- | --- | --- |

| 13. | Specification of privilege or duty to refuse to give evidence under the law of the Requesting State (Art. 11(b)) | Under U.S. law, the most common evidentiary privileges are the attorney/client privilege, which privileges a witness to refuse to answer a question that calls for the disclosure of communications between a lawyer and his or her client made for the purpose of requesting or receiving legal advice, and the privilege against self-incrimination, which privileges a witness to refuse to answer any question if the answer might incriminate the witness. There are various other privileges in U.S. law, none of which are likely to have relevance on the facts of this case. |
| --- | --- | --- |

The Court expresses its appreciation to the Ministry of Justice for its courtesy and assistance in this matter.

| Date of request |  |
| --- | --- |
| Signature and seal of the Requesting Authority |  |

EXHIBIT 1

## UNITED STATES DISTRICT COURT
## THE DISTRICT OF DELAWARE

| | |
|---|---|
| A.L.M. HOLDING COMPANY and ERGON ASPHALT & EMULSIONS, INC., | |
| *Plaintiffs/Counterclaim-Defendants*, | Case No. 1:24-cv-00363-JPM |
| v. | **JURY TRIAL DEMANDED** |
| ZYDEX INDUSTRIES PRIVATE LIMITED and ZYDEX INC., | |
| *Defendants/Counterclaim-Plaintiffs*. | |

## **COMMISSION**

Pursuant to Rule 28(b)(2) of the Federal Rules of Civil Procedure and Article 17 of the

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970,

23 U.S.T. 2555, the Court commissions and appoints

> Alexander Blumrosen
> Polaris Law
> 4, avenue Hoche
> 75008 Paris, France
> +33 11 43 18 02 60
> ablumrosen@polarislaw.eu

as commissioner, pending approval of the French Ministry of Justice, as commissioner to (1)

oversee the deposition of French non-party witnesses who voluntarily agree to be deposed in

France and (2) to oversee the production of documentary evidence located in France in this case.

The evidence will be taken without any compulsion. Any depositions shall be taken

remotely via the Zoom videoconferencing platform, which shall be controlled by Universal Court

Reporting, Inc. or another firm appointed by Mr. Blumrosen.

7

The deposition will be recorded stenographically and videographically. Stenographers and videographers employed by Universal Court Reporting, Inc., or such other stenographers and videographers as the parties may agree to, will record the witnesses' testimony by reasonable technological means, including remote video capture/recording. The recording of the deposition may only be suspended during the deposition upon the stipulation of counsel. Except by the stenographer and the videographer, the deposition may not otherwise be recorded without the consent of the parties.

If needed or requested by the witness, an interpreter shall be provided.

The parties may use the breakout room feature of the Zoom platform, and conversations in the breakout rooms shall not be recorded.  The breakout rooms shall be controlled and established by the firm appointed to control the Zoom platform prior to the deposition. All deposition attendees shall attend remotely and separately, although the witness may be present in the same room with counsel during the deposition and during breaks.

All persons attending, observing, or listening in to a deposition shall announce on the record their name and physical location (by street address). Any changes of location during the deposition must be announced on the record. If any party objects to any person's attendance if that person is not a party, a witness, or counsel of record for a party or for the witness, then that person shall not be permitted to attend the deposition.  Each deposition attendee shall be visible to all other attendees during the questioning of the witness.  The witness may take a break at any time as needed, including to consult with counsel in a breakout room, but not while a question asked by the examining attorney is pending.

During the examination, no person is permitted to communicate with the witness by any means not recorded in the same manner as the deposition itself is recorded. No witness may

communicate or attempt to communicate with any person in a manner that the examining attorney cannot observe through the Zoom platform. The witness must shut off all electronic devices other than the devices that he or she will be using to access the Zoom videoconferencing platform.

Counsel shall present exhibits electronically using a shared screen at the time of the deposition. In advance of questioning about an exhibit, the exhibit must be made available to the witness and counsel in its entirety, and the witness and counsel shall have the opportunity to review the document.

Counsel may enter into stipulations regarding the reservation of objections and motions to strike to the time of trial.

In all other respects, depositions shall follow the procedures set forth in the Federal Rules of Civil Procedure. Pursuant to Fed. R. Civ. P. 29, the parties may stipulate to ad hoc modifications to accommodate the needs of a particular witness or to resolve any issues that arise with respect to a particular deposition. Such modifications may be agreed in writing or memorialized on the record at a deposition, and the parties may seek a ruling from the Court, on an expedited basis if necessary, subject to the Court's availability.

_____

## EXHIBIT 2

1.    The technical data sheets and safety data sheets for Cecabase RT additives used for the mixture or optimization of asphalt compositions or products, that were publicly available or disseminated from January 1, 2005 to December 31, 2007.

2.    Marketing materials relating to the use of Cecabase RT in connection with non-foamed "warm-bituminous mix" production or compaction asphalt applications that were publicly disseminated, or distributed between January 1, 2005 and December 31, 2007.

3.    Any printed publications, including any articles, books (or portions thereof), presentations, patents, patent applications, white papers, or other similarly published materials that relate to the use of Cecabase RT for non-foamed "warm bituminous mix," and that were published between January 1, 2005 and December 31, 2007.

# EXHIBIT E

<u>SCHEDULE 1</u>
<u>Topics for Testimony from DGA Group</u>

1.        State your name, profession, employer, professional title, and business address.

2.        Has the chemical composition of Colzuphalt that is offered for sale commercially by DGA Group today been changed from the Colzuphalt used in the test sections on the B106 roadway in connection with the project with reference code FE 07.203/2002/CRB, as described in the prior art reference entitled "The 'low temperature asphalt' test sections on the A 7 and B106 motorways," which was presented publicly at the Asphalt Road Conference 2005?

3.        When did DGA first start publicly marketing, publicly advertising, and/or publicizing to the public the warm mix/warm asphalt compaction capabilities (also known as "temperature reduced rolled asphalt") of Colzuphalt?  Between January 1, 2003 and December 31, 2007, what marketing materials did DGA utilize to publicly promote the warm mix capabilities of Colzuphalt?

4.        Prior to December 31, 2007, did DGA Group publicize in written materials that were available or accessible to members of the public the typical mix and compaction temperatures for Colzuphalt sold by DGA Group when used as an asphalt additive?  If so, what were those publications, how were they distributed or disseminated, and to whom were they distributed or disseminated?

# EXHIBIT F

SCHEDULE 1
Topics for Testimony from DGA Group

1.    State your name, profession, employer, professional title, and business address.

~~2.    How was Colzuphalt used in connection with the project with reference code FE 07.203/2002/CRB?~~

~~3.    Prior to December 31, 2007, what data or other information was submitted to Bundesanstalt für Straßenwesen ("BASt") as part of the qualification process for Colzuphalt?~~

4.    ~~What was~~Has the chemical composition ~~for Colzuphalt sold by DGA Group between January 1, 2001 to December 31, 2007? Does~~of Colzuphalt that is offered for sale commercially by DGA Group today ~~have that same chemical composition?~~

~~5.~~2.    ~~What was~~been changed from the ~~chemical composition for~~ Colzuphalt used in the test sections on the B106 roadway in connection with the project with reference code FE 07.203/2002/CRB, as described in the prior art reference ~~code FE 07.203/2002/CRB? Does Colzuphalt that is offered for sale commercially by DGA Group today have that same chemical composition~~entitled "The 'low temperature asphalt ' test sections on the A 7 and B106 motorways," which was presented publicly at the Asphalt Road Conference 2005?

~~6.~~3.    When did DGA first start publicly marketing, publicly advertising, and/or publicizing to the public the warm mix/warm asphalt compaction capabilities (also known as "temperature reduced rolled asphalt") of Colzuphalt? ~~Prior to~~ Between January 1, 2003 and December 31, 2007, what marketing materials did DGA utilize to publicly promote the warm mix capabilities of Colzuphalt?

~~7.    Which DGA Group customers have used Colzuphalt for warm mix or warm compaction asphalt applications (also known as "temperature reduced rolled asphalt") prior to December 31, 2007?~~

~~8.~~    Prior to December 31, 2007, ~~what were the typical mix and compaction temperatures for Colzuphalt sold by DGA Group when used as an asphalt additive?~~

~~9.    Prior to December 31, 2007, how~~did DGA Group ~~advertise, publish, or otherwise publicized the warm mix capabilities (also known as "temperature reduced rolled asphalt") of Colzuphalt when used as an asphalt additive? What were those advertisements or publications, how were they distributed or disseminated, and to whom were they distributed or disseminated?~~

4.    ~~Prior to December 31, 2007, did DGA Group advertise, publish, or otherwise~~ publicize in written materials that were available or accessible to members of the public the typical mix and compaction temperatures for Colzuphalt sold by DGA Group when used as an asphalt additive?  If so, what were those ~~advertisements or~~publications, how were they distributed or disseminated, and to whom were they distributed or disseminated?

# EXHIBIT G

**LETTER OF REQUEST**

(Convention of 18 Mar 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters)

| 1. | Sender | Hon. Jon P. McCalla, U.S. District Judge<br>United States District Court for the District of Delaware<br>844 North King St<br>Wilmington, DE 19801 U.S.A. |
|---|---|---|
| 2. | Central Authority of the Requested State | Präsident des Oberlandesgerichts Düsseldorf<br>Cecilienallee 3<br>40474 Düsseldorf<br>Telefon: +49 211 4971-0<br>Fax: +49 211 4971-548<br>poststelle@olg-duesseldorf.nrw.de |
| 3. | Person to whom the executed request is to be returned | Andrew D. Gish, Esq.<br>Gish PLLC<br>41 Madison Ave., Floor 31<br>New York, NY 10010 USA<br>andrew@gishpllc.com |
| 4. | Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request | |
| | Date | December 10, 2024 |
| | Reason for urgency | Under the current scheduling order in this Matter, the Court will hold a hearing related to the interpretation of claim terms on January 19, 2025. To permit a reasonable time to obtain the requested information in advance of that deadline, the Requesting Authority defined below seeks an initial response by December 10, 2024. |

In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following request:

| 5. a | Requesting authority (Art. 3(a)) | United States District Court for the District of Delaware<br>844 North King St<br>Wilmington, DE 19801 U.S.A. |
|---|---|---|
| b | To the Competent Authority of (Art. 3(a)) | Germany |
| c | Names of the case and any identifying number | A.L.M. Holding Co. et al. v. Zydex Industries Private Limited, et al., No. 1:24-cv-00363-JPM (D. Del.) |

| 6. | Names and addresses of the parties and their representatives (including representatives in the Requested State) (Art. 3(b)) |
|---|---|

| a | Plaintiff | A.L.M. Holding Co.<br>920 10th Ave. North<br>Onalaska, WI 54650 USA<br><br>Ergon Asphalt & Emulsions, Inc.<br>2829 Lakeland Dr.<br>Jackson, MS 39232 USA |
|---|---|---|
|  | Representatives | John C. Phillips, Jr.<br>Megan C. Haney<br>Phillips, McLaughlin & Hall, P.A.<br>1200 North Broom Street<br>Wilmington, DE 19806 U.S.A.<br>jcp@pmhdelaw.com<br>mch@pmhdelaw.com<br>+ 1 (302) 655-4200<br><br>Jeffer Ali<br>Husch Blackwell<br>80 S. Eighth Street<br>Suite 4800<br>Minneapolis, MN 55402 U.S.A.<br>jeffer.ali@huschblackwell.com<br>+1 (612) 852-3610<br><br>Stephen R. Howe<br>Husch Blackwell LLP<br>511 N. Broadway, Suite 1100<br>Milwaukee, WI 53202<br>Steve.howe@huschblackwell.com<br>+1 (414) 273-2100 |
| b | Defendants | Zydex Inc.<br>106 Kitty Hawk Drive<br>Morrisville, NC 27560 U.S.A.<br><br>Zydex Industries Private Limited<br>61A, Zydex House<br>Gotri, Sevasi Road<br>Gotri, Valdodara<br>39 0021<br>Gujarat, India |
|  | Representatives | David E. Moore<br>Bindu Palapura |

Andrew M. Moshos
Malia C. Dang
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801 U.S.A.
dmoore@potteranderson.com
bpalapura@potteranderson.com
amoshos@potteranderson.com
mdang@potteranderson.com
+1 (302) 984-6000

Andrew Gish
Edward L. Tulin
Conor McDonough
Raymond Bilderbeck
Darlena Subashi
Gish PLLC
41 Madison Ave., Floor 31
New York, NY 10010 USA
andrew@gishpllc.com
edward@gishpllc.com
conor.mcdonough@gishpllc.com
ray@gishpllc.com
darlena.subashi@gishpllc.com
+1 (212) 518-2000

The defendants are also represented, with respect to this letter of request only, by:

Theodore J. Folkman
Rubin and Rudman LLP
53 State St.
Boston, MA 02109 USA
+1 (617) 330-7135
tfolkman@rubinrudman.com

and

Peter Bert
Taylor Wessing Partnerschaftsgesellschaft mbB
Thurn-und-Taxis-Platz 6
60313 Frankfurt a.M.
Tel. +49 17 12415-503
Fax +49 69 97130-100
p.bert@taylorwessing.com

| 7. a | Nature of the proceedings | Civil action for damages and injunctive relief alleging infringement of six U.S. patents. |
|---|---|---|
| b | Summary of complaint | The plaintiffs claim that the defendants have made, sold, and/or imported additives used to make either warm mix paving compositions for coating asphalt roads and surfaces or paving compositions that are applied and compacted at warm temperatures that allegedly infringe the plaintiffs' patents. |
| c | Summary of defense and counterclaim | The defendants deny that they have infringed the patents and assert that the patents are invalid because the claimed inventions are not novel, and because the plaintiffs are equitably estopped from asserting infringement, among other reasons. |
| d | Other necessary information or documents | |

| 8. a | Evidence to be obtained or other judicial act to be performed (Art. 3(d)) | Testimony from the person identified in item 9, below. |
|---|---|---|
| b | Purpose of the evidence or judicial act sought. | The evidence is sought for use at trial, and the defendant believes it will be material to the validity of the patents asserted by the plaintiffs. The testimony sought also includes questions intended to ensure that documentary evidence will be admissible under the U.S. law of evidence, which requires that sufficient evidence of the authenticity of documents be offered before the documents may be admitted in evidence and which requires that a sufficient foundation be laid to treat a document as a business record that may be admitted as the truth of what it asserts notwithstanding the ordinary rule forbidding the use of hearsay (that is, statements made out of court, when offered to prove the truth of the matter asserted). |

| 9. | Identity and address of persons to be examined (Art. 3(e)) | Dortmunder Gußasphalt GmbH & Co. KG ("DGA Group") Am Hafenbahnhof 10 44147 Dortmund, Germany<br><br>See also Item 13, which explains the special procedure requested to designate the person who will testify on behalf of DGA Group. |
|---|---|---|

| 10. | Questions to be put to the persons to be examined, or statements of the subject matter about which they are to be examined (Art. 3(f)) | See Schedule 1 for DGA Group. |
|---|---|---|

| 11. | Documents or other property to be inspected (Art. 3(g)) | Not applicable. |
|---|---|---|

| 12. | Any requirement that the evidence be given on oath or affirmation and any special form to be used (Art. 3(h)) | The evidence should be given on oath or affirmation. No special form is required, but the oath or affirmation should be in a form designed to impress on the witness's conscience the duty to testify truthfully, as required for the admissibility of the testimony by Rule 603 of the Federal Rules of Evidence. A copy of this rule is included in Schedule 2. |
|---|---|---|

| 13. | Special methods or procedures to be followed (Arts 3(i) and 9) | The Requesting Authority respectfully requests that the appropriate judicial authority of Germany apply the following special procedures or methods in the taking of the testimony.<br><br>1. The testimony should be transcribed verbatim. If a verbatim transcript is not possible, an audio recording of the testimony should be made to allow for later transcription If an audio recording is used, the Requesting Authority defined above requests that the German court also provide a written record of the testimony in the form it would ordinarily use under German law.<br><br>2. After the judge or other appropriate official asks the questions on Schedule 1, counsel for each of the parties should be permitted to ask questions to clarify the witness's answers and to ask additional questions. Under US evidence law, statements of a non-party witness who is not testifying in person at the trial are hearsay and are, as a general matter, not admissible in evidence. There is an exception to this rule for witnesses whose appearance at trial cannot be obtained, which most likely will apply to the witness in this case, because the Requesting Authority defined above lacks the power to compel them to travel from Germany to testify. The exception applies when the party against whom the testimony is offered had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination," that is, when that |
|---|---|---|

| | | |
|---|---|---|
| | | party had the ability to question the witness. A copy of Rule 802 of the Federal Rules of Evidence, which states the general rule against hearsay, and an excerpt of Rule 804 of the Federal Rules of Evidence, which includes this exception, are included in Schedule 2.<br><br>3.  The entity named as deponent should be required to designate a witness able to testify about the information requested in the questions attached in Schedule 1 that is known to the entity Under Rule 30(b)(6) of the Federal Rules of Civil Procedure, when an entity is named as a deponent, it "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." The rule also provides that "The persons designated must testify about information known or reasonably available to the organization." The relevant excerpt of Rule 30 of the Federal Rules of Civil Procedure is included in Schedule 2. |
| 14. | Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Art. 7) | The Requesting Authority respectfully requests that the representatives of the parties identified in Item 6 be given advance notification, by post and email, of the time and place for the execution of the request. |
| 15. | Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Art. 8) | Not applicable. |
| 16. | Specification of privilege or duty to refuse to give evidence under the law of the Requesting State (Art. 11(b)) | Under U.S. law, the most common evidentiary privileges are the attorney/client privilege, which privileges a witness to refuse to answer a question that calls for the disclosure of communications between a lawyer and his or her client made for the purpose of requesting or receiving legal advice, and the privilege against self-incrimination, which privileges a witness to refuse to answer any question if the answer might incriminate |

|   |   | the witness. There are various other privileges in U.S. law, none of which are likely to have relevance on the facts of this case. |
|---|---|---|
| 17. | The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by: | The defendants |

| Date of request |  |
|---|---|
| Signature and seal of the Requesting Authority |  |

8

SCHEDULE 1
Topics for Testimony from DGA Group

1.     State your name, profession, employer, professional title, and business address.

2.     Has the chemical composition of Colzuphalt that is offered for sale commercially by DGA Group today been changed from the Colzuphalt used in the test sections on the B106 roadway in connection with the project with reference code FE 07.203/2002/CRB, as described in the prior art reference entitled "The 'low temperature asphalt ' test sections on the A 7 and B106 motorways," which was presented publicly at the Asphalt Road Conference 2005?

3.     When did DGA first start publicly marketing, publicly advertising, and/or publicizing to the public the warm mix/warm asphalt compaction capabilities (also known as "temperature reduced rolled asphalt") of Colzuphalt?  Between January 1, 2003 and December 31, 2007, what marketing materials did DGA utilize to publicly promote the warm mix capabilities of Colzuphalt?

4.     Prior to December 31, 2007, did DGA Group publicize in written materials that were available or accessible to members of the public the typical mix and compaction temperatures for Colzuphalt sold by DGA Group when used as an asphalt additive?  If so, what were those publications, how were they distributed or disseminated, and to whom were they distributed or disseminated?

<u>SCHEDULE 2</u>

**<u>Federal Rule of Evidence Rule 603. Oath or Affirmation to Testify Truthfully</u>**

Before testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience.

**<u>Federal Rule of Evidence Rule 802. The Rule Against Hearsay</u>**

Hearsay is not admissible unless any of the following provides otherwise:

      a federal statute;

      these rules; or

      other rules prescribed by the Supreme Court.

**<u>(Excerpt from) Federal Rule of Evidence Rule 804. Hearsay Exceptions; Declarant Unavailable</u>**

(a) Criteria for Being Unavailable. A declarant is considered to be unavailable as a witness if the declarant:

      (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;

      (2) refuses to testify about the subject matter despite a court order to do so;

      (3) testifies to not remembering the subject matter;

      (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

      (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

10

(A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or

(B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

But this subdivision (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying.

**(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

**(1) Former Testimony**. Testimony that:

(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

(B) is now offered against a party who had — or, in a civil case, whose predecessor in interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

\* \* \* \*


**(Excerpt from) Federal Rules of Civil Procedure Rule 30. Depositions by Oral Examination**

**(b) Notice of the Deposition; Other Formal Requirements.**

\* \* \* \*

(6) Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.

11

The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**THE DISTRICT OF DELAWARE**

| | |
|---|---|
| A.L.M. HOLDING COMPANY and ERGON ASPHALT & EMULSIONS, INC., | |
| *Plaintiffs/Counterclaim-Defendants*, | Case No. 1:24-cv-00363-JPM |
| v. | **JURY TRIAL DEMANDED** |
| ZYDEX INDUSTRIES PRIVATE LIMITED and ZYDEX INC., | |
| *Defendants/Counterclaim-Plaintiffs*. | |

## COMMISSION

Pursuant to Rule 28(b)(2) of the Federal Rules of Civil Procedure and Article 15 of the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, the Court commissions and appoints any notarizing officer of the United States of America at Frankfurt, Germany to take the deposition on oral questions of any witness resident in Germany designated by

Dortmunder Guβasphalt GmbH & Co., KG
1 Humboldtstr., Plankstadt, 68723, GERMANY

a company organized under the law of Germany, to testify on its behalf. The deposition will be held on December 15, 2024 at the U.S. Consulate in Frankfurt.

The testimony is to be taken for use in the above-captioned action, which is a claim for infringement of U.S. Patents 7,815,725, 7,981,466, 8,734,581, 9,175,446, 9,394,652, and 10,214,646 and a counterclaim asserting that the patents are invalid. These patents are directed to certain asphalt paving compositions and methods of making them, and they involve the addition of certain additives to asphalt mixtures to lower the temperature necessary to mix those

compositions or to lower the temperature necessary to apply those compositions. Under Title 35, Section 102(a) of the United States Code, a person is not entitled to a patent if the claimed invention was "known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent." Printed publications dated prior to the effective filing date are known as "prior art." When a patent has issued but the accused infringer proves that the claimed invention is not novel in light of the prior art, the accused infringer has an affirmative defense to the claim of infringement and is also entitled to a declaration that the patent is invalid. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015) ("An accused infringer can, of course, attempt to prove that the patent in suit is invalid; if the patent is indeed invalid, and shown to be so under proper procedures, there is no liability."); *Orexo AB v. Actavis Elizabeth LLC*, 371 F. Supp. 3d 175, 181–82 (D. Del. 2019) ("An assertion of invalidity of a patent by an alleged infringer is not a 'claim' but a defense to the patent owner's 'claim.'"). The defendants, Zydex Industries Pvt. Ltd. and Zydex Inc., assert that the patents alleged to be infringed are invalid because, among other reasons, the inventions they claim are not novel. They assert that the witness has knowledge of prior art that, if proved, will demonstrate that the patents are invalid. The purpose of the deposition is to obtain evidence that such publications existed at the relevant time, and to address prior art that discusses asphalt additive products manufactured by Dortmunder Guβasphalt GmbH & Co., KG prior to the alleged invention date of the above-referenced patents.

The testimony will be taken without any compulsion. Testimony will be recorded stenographically by a certified stenographer whose fees will be paid by the defendants. The witness may, if he wishes, testify in English, and if the witness prefers to testify in German, then the proceedings will be translated by a certified translator whose fees will be paid by the defendants.

The proceedings will take place in accordance with Rule 30(c) of the Federal Rules of Civil Procedure, which provides for the order of examination and cross-examination of the witness and the making of objections, subject to the limitations on the length of the deposition imposed by Rule 30(d)(1) of the Federal Rules of Civil Procedure, namely, one day of seven hours. Counsel for the parties may stipulate that objections except with respect to the form of the question and motions to strike will be reserved until the time of trial, and they may stipulate to waive the requirements of execution of affidavits of accuracy by the stenographer and the translator and to permit the witness to read and sign the transcript of the testimony and to make any corrections outside the presence of the notarizing officer. Counsel for the parties may also stipulate to waive the requirement that the notarizing officer prepare a closing certificate.

_____